Case number 19-1855, Eastern Arkansas, Karen Roebuck v. USAble Life. Mr. Lacey, we'll hear from you first. Thank you. May it please the Court, my name is Brandon Lacey, I represent Karen Roebuck. For purposes of this argument, the case involves really two primary issues. One is the application of a state-specific insurance industry rule, and the application of that rule really involves a fact-intensive analysis of the language of the disability claim in question. The second policy is a much broader concept involving the application of the Department of Labor's full and fair review regulation promulgated in 2002. And we respectfully submit that if the district court's decision is allowed to sustain, that full and fair review provision will essentially be eviscerated. And we'll see a complete overhaul in how insurance companies evaluate these claims to the detriment of planned participants. Karen Roebuck was a claims analyst for insurance claims for Blue Cross Blue Shield. She was involved in a motor vehicle collision in 2013, ultimately had a laminectomy procedure performed on her lumbar spine, and that led to a claim for disability in 2016. Her bases for disability were neck issues, back issues, shoulder pain, and left wrist pain. At the time of her original disability, it was still a little uncertain what the origin of the injuries were, what the origin of the pain was. But her claim was supported by doctors. It was reviewed by U.S. Able by an in-house nurse named Amy Smith, who determined that the diagnoses were a bit inconsistent at that point, and she referred Ms. Roebuck for a functional capacity evaluation. That evaluation concluded after three and a half hours that Ms. Roebuck's reports of pain were credible, but that in the evaluator's opinion, she could perform a sedentary occupation for 40 hours a week. That decision led to a denial, which was appealed by Ms. Roebuck. In the appeal, she submitted an additional 2,000 pages of medical records documenting additional treatment that she had received. In the meantime, the medical records documented a progression of her symptoms. Her cervical spine went from mild to moderate stenosis, EEG confirmed radiculopathy, and a neurosurgeon actually recommended an anterior cervical discectomy infusion procedure from the C4 through C7. Nevertheless, U.S. Able did not send the file to an independent medical physician or any independent medical professional for review. Had an in-house nurse named Stephanie Benuel review the file, and she concluded that essentially nothing had changed, and because the functional capacity evaluation said that she could work, she sort of bootstrapped her opinion to the FCE conclusion that she could work. The first issue on appeal is the standard overview, and the Arkansas Insurance Commissioner has issued a rule impacting disability plans that essentially prohibits discretionary language in any plan that was issued or renewed after March 1, 2013. The plan in this case, there's no dispute, was issued on January 1, 2011, so that's a little too early. There's a specific renewal date in the plan of January 1, 2012, and then the plan mentions the anniversary date every January 1, every year thereafter. So the district court answered the question, is an anniversary date also a renewal date, and I would submit that that's the wrong question to ask in this case. If the question is, is an anniversary a renewal, then of course the answer is no. They can mean two separate things without any indication to the contrary. The cases that previously considered the topic cited by U.S. Abel, the Owens v. Liberty Life insurance case, Price v. Tyson long-term disability plan, those cases made, and the plans made no reference to a renewal date. They didn't say renewal at all, and the claimants in those cases were attempting to bootstrap an anniversary with a renewal. In this case, the language itself of the plan includes a renewal date. The language itself specifically references the right to change premium rates after the first renewal. So the plan itself specifies the first renewal, so that indicates there has to be a second. The plan wouldn't have put that in there if there was only one renewal date. And then, in fact, in some additional citations that I brought to the court's attention last week, we realized that renewal, there has to be a term. The district court essentially concluded, well, the plan renewed on January 1, 2012. I'm not going to interpret an anniversary date as being a renewal date, so there was only one renewal and there's no renewal thereafter. That would mean that the plan goes into perpetuity, which is a result that just can't happen. The Arkansas Insurance Code, Rural Regulation No. 18, this is Arkansas Administrative Code 54.00.18. Each policy shall include a renewal, continuation, or non-renewal provision. Such provisions shall be appropriately captioned and clearly state the duration of the term of coverage for which the policy is issued and for which it may be renewed. There has to be a term. It can't just renew once and then continue into perpetuity. And the reason can be seen from Rule and Regulation 52, which we brought to the court's attention last week. During the term of renewal, the policy can't be canceled except for non-payment of the premium or fraud on the part of the insured. So there's a difference between termination and a non-renewal. A plan is terminated because the insured doesn't pay the premium, the insured commits fraud, but the insurance company can't say, we've paid too many claims. This is becoming too costly. We're going to terminate our coverage. They have to wait until the renewal provision to non-renew the plan. Well, Mr. Lacey, did you put on any evidence in the district court about renewals of this policy? It seems like that would be the simple way to resolve this. If your client renewed it on dates after January 1, 2012, then couldn't you have just put on evidence of the payment? We are. It's not my client's. My client was a participant in the plan by virtue of her employment. Her employer would have renewed it. And the plan itself just basically stays in force and in effect until canceled or non-renewed. But you're the plaintiff. I thought you had the burden of proof. Maybe you could have gathered some evidence if it had to come from the employer or whomever. This was an ERISA case subject to an ERISA scheduling order. We were limited to what's in the administrative record. The administrative record contained a plan that contained a renewal date in it in renewal language. So we believed that the evidence was clear based on the face of the plan language. So this is a contracted... Why were you limited to what was in... I mean, I understand that normally review of an ERISA administrative decision is based on the record. But when a plaintiff is claiming something outside the record shows there should be de novo review, I'm not aware of any rule that says you're forbidden to present additional evidence. Are you saying the district court somehow forbade that? Well, we had a scheduling order that restricted any discovery and required briefs on the administrative record. And I believe that the analysis based on the policy language itself is clear. The policy says first renewal. There has to be a second renewal. The rules of the insurance commission actually indicate that there has to be a term of renewal. So heeding Justice Kagan's admonition in U.S. Airways versus McCutcheon, the words of the plan may leave gaps. And the court's entitled to look outside the plan's written language to decide what the agreement means. This is contract interpretation. And in this case, we have plan language that provides for a first renewal. It actually contains an express date for a renewal. The Arkansas Administrative Code requires that plans issued in Arkansas contain durations for renewal terms. There can be no other conclusion than that. In this case, the renewal date was January 1st, 2012, and then there's an anniversary every January 1st. The terms are synonymous in the plan. There's no other conclusion that can be reached than that the plan renews every January 1st. Could it be a non-cancellable policy? Isn't that another one of the options in the administrative rule? It can be non-cancellable, it can be guaranteed renewable, or non-cancellable. All three of those have to be for a specified term. It can't go into perpetuity. And that's according to the Arkansas Insurance Commission. But the district court's opinion would... Rule 18-8 for that proposition? Yes. Where it says the policy is supposed to clearly state the duration of renewability and the duration of the term of coverage? That's right. Well, what if the policy just fails to comply with that rule? Because it doesn't state the duration of the renewability and duration of the term. I mean, it might be a policy that doesn't conform to the rules, but how does that affect our case? Well, certainly we can't use the insurer's non-compliance with a requirement to allow a more deferential standard of review to be triggered. And that's what we're asking, is that a de novo standard of review be applied based on the application of the Rule 101. If it's a non-compliant policy, then how can we apply the language in the policy that gives deference to the administrator? Counsel, wouldn't an ambiguity normally be construed against the insurer? That's absolutely correct, Your Honor. And that's something that is not necessarily adhered to in those same words in an ERISA case. And I wish they were. As a plaintiff's lawyer in ERISA cases, I've tried to find that and apply that same term precisely because that is what we ordinarily apply in all contract cases. But the most applicable language that I believe applies is the language from the U.S. Airways v. McCutcheon, United States Supreme Court. Justice Kagan is saying we have to apply a common sense understanding to the language of these plans. And if there are gaps, we can use our common sense to figure out what those gaps mean. So you didn't find any ERISA authority about construing the contract against the insurance or the administrator? No, Your Honor. And I don't want to represent that that is the standard in an ERISA case because it's not. And like I said, the closest language is Justice Kagan's language from... Common sense. Right. So Rule 101 invalidates the discretionary language. And that's the point. I think the plan does contain a renewal term. I think they use the term synonymously. But if it doesn't, then it's a non-conforming plan. Either way, they don't get to apply the deferential language contained in the plan to their benefit. But if we get past Rule 101, there's some argument in the briefs over the Wu sliding scale analysis because there is a conflict of interest. The source of the funds was making the decision here. We believe that entitles us to a sliding scale, less differential standard of review. But I don't want to spend my time here arguing. I'm almost out. And I need to cover the other issue, the full and fair review. Because it's arbitrary and capricious even if we don't get to a sliding scale. The full and fair review provision of the federal regulations require on appeal, not during the first decision, but on appeal that if it involves medical judgment that it be decided that it be reviewed by a health care professional in the field of medicine involved in the medical judgment and that that person be independent from the original decision. The district court cases interpreting that provision have all interpreted that regulation narrowly, require an independent evaluation. We've cited to the Niheisel v. AK Steel Corp. where they said that subordinate isn't defined, but they interpreted it as meaning the consultant not be employed in a manner that suggests that he or she is beholden to anyone whose opinion has already been received. So in this case, what we have is Stephanie Benwell, RN. Her opinion is included on U.S. ABLE letterhead. We said she was an in-house nurse in her statement of material facts. U.S. ABLE didn't dispute that position. We don't know whether she's actively licensed, where she maintains her license. We don't know what experience that she has to allow her to consider neurological issues, neck, low back, shoulder, cervical radiculopathy, any of those things. She simply, Stephanie Benwell, RN, who on U.S. ABLE letterhead looks at this thing and says, I think that the original functional capacity evaluation was okay. In all of these medical records that confirm radiculopathy, that recommend a surgery, that say that her condition has progressed from mild to moderate, that doesn't change my mind. The district court said there was nothing to show that her compensation was tied to her findings, but that's not our burden. It is the regulation itself requires that the plan, the administrative record, demonstrate the independence. That's why in almost every single ERISA case I've ever seen before on appeal, you have a document on letterhead from Independent Medical Consultants, Inc., with a doctor saying, I'm licensed in rheumatology, and I certify that my compensation wasn't tied to my opinion, and it is my opinion that X, Y, and Z. In this case, we have none of that. We have in-house nurse Benwell who we don't know if she even has an active license, but where she's licensed and what gives her the qualifications to say that this cervical radiculopathy doesn't change anything. The Fairbaugh case mentions that at this point most planned decisions have seen multiple doctors. In this case, we have none, and you will see if this case stands, the industry turned on its head. Independent doctors won't be hired. Insurance companies will rush to just allow their in-house nurses make these decisions, and your honors know that these cases are complicated and hard enough for claimants to win as it is with arbitrary and capricious standard. If insurance companies are allowed to deny claimants claims based on nothing more than in-house nurse reviews, they'll be impossible. No claimant will ever win an ERISA case again. Okay, your time has expired. I'd like to ask you one more question on our time, though. Could you state again why you think Rule 101 that you quote would mean that if the policy is non-conforming, then there would be no deferential review? Yeah, your honor, it's a little bit of a confusing issue because I didn't discover the requirements until last week. Your honor, there has to be a term. If there's not a term, as you pointed out, it would be non-conforming. Yeah, I'm focused on that narrow question then of what happens if it's non-conforming. You say that implies no deferential review, and I'm asking you to explain again why you say that is so. Well, because the language of Rule 101 says it shall apply to all disability income policies issued in a state which are issued or renewed on. Okay, so when the insurance commissioner drafted this language, it was based upon the assumption that every insurance policy was going to contain a renewal date because that's what the insurance commissioner had already implemented and required as part of a previous rule. These rules are issued consecutively, so Arkansas Administrative Code 54 was already on the books. I'm sorry, Arkansas Administrative Code 18 was already on the books. It said there has to be a renewal date, there has to be a renewal term, there has to be a duration. So when Rule 101 was implemented, it says that this shall apply to all disability income policies issued or renewed after March 1, 2013. Yeah, I don't follow your rationale, though. If there was no renewal date, why would Rule 101 apply even if the policy was non-conforming because it didn't have a renewal date? Because Rule 101 assumes there has to be a renewal date. No, it could be non-cancellable, which is separate, right? Only non-cancellable for a certain amount of term. There still has to be a renewable term. Non-cancellable is used... Non-cancellable, guaranteed renewable, or non-cancellable and guaranteed renewable provision, which provides that the policy shall not be subject to termination of coverage of the insurer or insurer's dependents other than for non-payment of premium material ruleful fraud. It's difficult. We don't have any briefing on this. As you say, you just pointed them out last week, and if these are the key to the case, we'll have to study them. But thank you for your argument. Ms. Blasingame, we'll hear from you. Thank you, Your Honor. May it please the Court, my name is Samantha Blasingame, and I represent the Appalachee U.S. Able Life. The Court should affirm the decision of the District Court upholding U.S. Able Life's denial of benefits decision in this case. And I will stick to the two issues, unless the Court has other questions, two issues that Mr. Lacey focused on in his argument. So first, the District Court correctly determined that Arkansas Rule 101 does not make the discretionary clause in this policy unenforceable. And the reason is that the policy says that it is renewable, and the policy says that it renews on January 1, 2012. That's not in dispute. It says that. The policy also has an anniversary date. Within the policy, both dates are discussed. I wasn't clear on whether Mr. Lacey's position is that the anniversary date and the renewal date are synonymous. They are not synonymous, if that is his position. And you can tell that, again, from the plain language. There are multiple places where the policy employs anniversary date. Basically, what it is, it's where each year employees of the policyholder can opt into the policy, is what it's primarily about. Counselor, is it your position that this policy has only one renewal period? Yes, yes. It is USABLE Life's position that the policy is renewable. It renews one time. It can terminate after that, and there are provisions in the policy addressing the termination. So yes, Your Honor, that is our position. So what's the duration of the policy, then? I think it continues until it is terminated. There's an anniversary date every year. Mr. Lacey says under Arkansas rules, you can't have a policy like that that continues indefinitely. I apologize, Your Honor, for interrupting you. Like Your Honor pointed out, we haven't briefed this issue, and I haven't had much time to study it. I believe that if you look at Section 8 of Rule 18, this section, the required disclosures, General Rules 8.8.1, it does require the policy to have a renewal provision. The policy has that. It also says that the policy has to clearly state the duration, where limited, of renewability. I'm not sure that it requires there to be, I think if it is limited, it has to say the duration. But I don't think that it requires it to always have that first date and last date with respect to other people. It depends on the type of policy that it is, whether it's renewable or whether it has renewal, continuation, or non-renewal provision. I think he's reading the second use of duration there. You refer to the duration, where limited, of renewability, but he's referring to the next clause, which refers to the duration of the term of coverage for which the policy is issued. And I guess you're saying the duration of this policy was indefinite? It never ends unless someone terminates? After the first renewal, is that your position? Your Honor, I would look to the language of the policy to answer that question. And I do think that it does continue every year. And I'm not sure that's the word. It continues, the policy's in effect unless somebody terminates it. The covered employees that have opted into the plan on the anniversary date might change. I think that the time period is going to be year to year, but I'm not sure that the anniversary date is the same thing as the renewal date. I hope I'm answering your question, Judge Paulson. And again, if we had had the opportunity... You say you're not sure, I think that's kind of the crux of the case, is whether it is or it isn't. But I understand we're dealing with some unbriefed rules here. Yes, Your Honor, that's part of the problem. I'd be happy to submit a supplemental brief on that issue, Your Honor, and look at it more closely. The evidence that's in... The court will discuss that. If we want briefs, we'll let you know. But go ahead and proceed with your argument. Thank you, Judge Paulson. I think that if this issue had come up below, we could have submitted proof, U.S. Able Life, that this policy was submitted and approved by the Arkansas Insurance Department. And again, could have briefed this issue. And if the court thinks it's dispositive, we can submit some supplemental briefing. I would like to go to the second issue, which is whether or not U.S. Able Life's decision denying Ms. Roebuck's claim for long-term disability benefits was reasonable under the abuse of depression standard. And we think the district court correctly held that it was reasonable. There were multiple things in the record that supported U.S. Able Life's decision. One was the functional capacity evaluation, which was done at the request of the first medical consultant who reviewed the records, R.N. Smith. And after that functional capacity evaluation, the physical therapist, who was independent, the physical therapist's opinion was that Ms. Roebuck could do her sedentary work for 40 hours a week. And based on that, the claim was denied. Yes, Your Honor. My understanding that the job required constant sitting. And as best I could find from the FCE, it only concluded that she was capable of frequent sitting. And similarly, the job required constant use of her hands. And I didn't see any finding in the FCE about constant use of her hands. So I'm wondering if even under an abuse of discretion standard, whether there's substantial evidence in this case to turn down her claim. Your Honor, I think that there is, because the question, it wasn't focused on what the actual requirements of her job were. There was no dispute about that. The appeal that was brought to U.S. Able Life, it did not raise that as an issue. That the FCE had overlooked, or kind of, that the FCE's conclusions didn't actually support Ms. Roebuck's inability to do her job. That that nuance, it wasn't raised. So I don't think that that means that U.S. Able Life refused the discretion. We actually, U.S. Able Life's position is that its decision would be upheld on its own. We didn't do that in this case, but U.S. Able Life does think that full-on therapy was given. Based on all of the evidence of administrative records. Unless the judges have more questions, I would just ask the court to affirm the district court's decision and uphold U.S. Able Life's position. Thank you. All right. Seeing no questions, we'll thank you for your argument. And Mr. Lacey, I think your time's expired. I'll give you one minute if you care to provide anything briefly from Ms. Blessingame's argument. Well, briefly, Your Honor, we absolutely challenged the functional capacity evaluation on the appeal. That was the purpose of submitting 2,000 additional medical records to show there's no way that what the functional capacity analyst concluded that she could do was correct. And we expected, based upon the full and fair review provisions in the Code of Federal Regulations, that U.S. Able would have asked an independent medical professional to review this. U.S. Able did not. It sent it down the hallway to another in-house nurse who looked at it and said, unclear. That was her opinion. Her opinion after she reviewed all the new medical evidence was that it was unclear. But she concluded that nothing had changed since the time of the original functional capacity evaluation and she was going to stick with the original functional capacity evaluation's opinion. She didn't even opine on whether the functional capacity evaluation was valid or not or the supporting opinions were supported. Very well. Thank you both for your arguments. The case is submitted and the court will file an opinion in due course. Counsel are excused.